UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re: Bianchi Industrial Services, LLC,

                            Debtor.

Case No. 11-31035
Chapter 7

Lee E. Woodard, Chapter 7 Trustee,
                            Plaintiff,
vs.

Cathy S. Gatson, Clerk of the Circuit Court of
Kanawha County, West Virginia, and Advanced
Specialty Contractors, LLC, n/k/a Advanced
Energy Solutions LLC,
                            Defendants.

Adv. Proc. No. 11-50113

Appearances:

Lee E. Woodard, Esq.
Wendy A. Kinsella, Esq.
Kelly C. Griffith, Esq.
HARRIS BEACH PLLC
333 West Washington St., Suite 200
Syracuse, NY 13202

for Lee E. Woodard,
Chapter 7 Trustee

Suzanne Jett Trowbridge, Esq.
J. David Fenwick, Esq.
GOODWIN & GOODWIN, LLP
300 Summers St., Suite 1500
P.O. Box 2107
Charleston, WV 25328-2107

for Advanced Specialty
Contractors, LLC, n/k/a Advanced
Energy Solutions, LLC

Timothy N. Barber, Esq.
P.O. Box 11746
Charleston, WV 25339

for Cathy S. Gatson, Clerk
of the Circuit Court of Kanawha
County, West Virginia

## Memorandum-Decision and Order

       Chapter 7 trustee Lee E. Woodard ("Plaintiff" or "Trustee") seeks in this action a turnover of funds held *in custodia legis* by the Kanawha County Circuit Court Clerk in West Virginia either on the basis that the funds are property of the chapter 7 bankruptcy

estate or, alternatively, as funds subject to an avoidable preferential transfer. After answering the complaint, defendant Advanced Specialty Contractors, LLC n/k/a Advanced Energy Solutions, LLC ("Defendant" or "Advanced") moved for judgment on the pleadings against Trustee's complaint, which motion is currently pending before the court.

For the reasons expressed in this memorandum-decision, which incorporates the court's findings of fact and conclusions of law as permitted by Fed. R. Bankr. P. 7052, the motion is granted. In summary, the court concludes that the funds held *in custodia legis* are not property of the estate and no claim for recovery of the funds as a preferential transfer has been stated. Furthermore, given the background of the litigation and Trustee counsel's inability to articulate any additional fact which, if pled, would allow the complaint to survive, the court denies Plaintiff's request for leave to amend.

*Jurisdiction*

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2).

*Background Facts*

The underlying bankruptcy case was originally commenced as an involuntary chapter 7 proceeding against Bianchi Industrial Services, LLC ("Debtor") in the Southern District of West Virginia on January 26, 2011 (the "Petition Date"). The order for relief was entered on March 7, 2011. Following the transfer of the case to this court, Trustee was appointed to administer the estate.

Prior to filing, Debtor operated a demolition business. In 2008, CH2M Hill Constructors, Inc. ("Hill"), as general contractor, hired Debtor to work on a project for

2

Bayer CropScience, L.P. ("Bayer") in Kanawha County, West Virginia. Debtor subcontracted with Advanced to work at the site. When the work was completed, Debtor disputed and refused payment of $269,829.28, which Advanced claimed to be owed under its subcontract with Debtor. Advanced proceeded to serve and file a Notice of Mechanic's Lien against Bayer's property. In response, Debtor sued Advanced in the Circuit Court of Kanawha County, West Virginia, seeking a declaration that its mechanic's lien was null and void.[1] Advanced countered with two suits of its own: the first, against Debtor alleging breach of contract and seeking damages of $269,829.28 plus interest; and the second, against Bayer seeking to enforce the mechanic's lien.[2] Debtor responded with a Third-Party Complaint against Hill asserting that Debtor had not been paid for the work completed for Bayer, and Advanced asserted a direct claim against third-party defendant Hill for negligence and unjust enrichment. The state court substantively consolidated all three cases.

Because Bayer and Hill did not dispute that monies were owed for the completed work on the Bayer project, Advanced petitioned the state court to order Hill to deposit the funds into court. Advanced represented that upon deposit of the funds, it would release its mechanic's lien against the Bayer facility. Debtor claimed that Hill owed the money directly to Debtor and objected to the funds being paid into the court registry. Over Debtor's objection, the state court ordered Hill to deposit $220,543.96[3] with the Kanawha County Circuit Court (the "Funds"). Upon deposit of the Funds into the court registry,

---

[1] Debtor claimed that the lien was defective because it had not been properly perfected as prescribed by statute. *Bianchi Indus. Serv., Inc. v. Advanced Specialty Contractors, LLC*, No. 09-C-858 (Cir. Ct. Kanawha Cnty W. Va. filed May 7, 2009).

[2] *Advanced Specialty Contractors, LLC v. Bianchi Indus. Serv., Inc.*, No. 09-C-1638 (Cir. Ct. Kanawha Cnty W. Va. filed Sept. 3, 2009); *Advanced Specialty Contractors, LLC v. Bayer CropScience LP, Mid-Atl. Technical Eng'g, PLLC & W. Va. State Tax Dep't*, No. 09-C-2314 (Cir. Ct. Kanawha Cnty W. Va. filed Dec. 17, 2009).

[3] This amount represents the original $269,829.28 less Hill's legal fees and expenses of $49,285.32.

3

the court dismissed Bayer and Hill from the consolidated action with prejudice, recognized the release and discharge of Advanced's mechanic's lien against Bayer's property, and determined that the issues regarding the validity of Advanced's mechanic's lien were rendered moot.[4] The only issue remaining for the state court was determining the respective rights of Advanced and Debtor to the Funds.

While the litigation was pending, the state court granted Debtor counsel's request to withdraw from representation and directed Debtor to obtain substitute counsel within ten days. When Debtor failed to comply with the court's order, Advanced moved for default judgment against Debtor. The state court granted the motion and entered default judgment against Bianchi and in favor of Advanced in the amount of $269,829.28 plus pre-judgment interest in the amount of $37,051.63 and post-judgment interest as allowed under West Virginia law.[5] The Default Judgment directed the Clerk of Kanawha County Circuit Court to release the Funds and pay $220,543.96 plus interest to Advanced ten days after entry of judgment unless, prior to the expiration of such time, payment was stayed by further order of the court or an order of the Supreme Court of Appeals of West Virginia. Eight days later, the Petition was filed. In light of the bankruptcy filing, the Funds were not released and remain on deposit with Cathy S. Gatson, Clerk of the Circuit Court of Kanawha County, West Virginia ("Clerk"), named as a defendant in this action.

---

[4] *See* Order Granting Advanced Specialty Contractor LLC's Motion for Consent for Deposit into Court at 3 ¶ 6, *Bianchi Indus. Serv., LLC v. Advanced Specialty Contractors, LLC*, No. 09-C-858 (Cir. Ct. Kanawha Cnty Aug. 17, 2010).

[5] As the basis for entering the default judgment, the court cited Debtor's "failure to abide by the Court's Order to retain new counsel…as well as the reasons appearing in Advanced's Motion for Default Judgment….". *See* Order Granting Default Judgment Against Bianchi Industrial Services, LLC and Directing Payment of Funds Held by Circuit Clerk Pursuant to Rule 67, *Bianchi Indus. Serv., LLC v. Advanced Specialty Contractors, LLC*, No. 09-C-858 (Cir. Ct. Kanawha Cnty Jan. 18, 2011) ("Default Judgment").

4

### *Trustee's Claims and Advanced's Response*

Trustee's complaint alleges that the Funds are property of the estate under 11 U.S.C. § 541[6] as an account receivable due from Hill to Debtor. The complaint seeks an order directing the Clerk as custodian of the Funds to turn them over to Trustee pursuant to Code § 543. If the Clerk is found not to be a custodian within the meaning of the foregoing statute, the complaint seeks an order directing the Clerk to deliver the Funds pursuant to Code § 542 as property that Trustee may use. The complaint further alleges that Advanced does not have a claim to the Funds with priority over Trustee's claim because Advanced did not hold a valid mechanic's lien duly perfected under West Virginia law and that this defect in the lien's perfected status elevates Trustee's claim to the Funds over that of Advanced.

Alternatively, the complaint alleges that all required elements of a preferential transfer are present. Trustee seeks to avoid the alleged preferential transfer under Code § 547 and recover the Funds on behalf of the chapter 7 estate. Trustee contends that entry by the state court of the Default Judgment on January 18, 2011, which directed payment of the Funds to Advanced, constituted a transfer of property of Debtor. According to Trustee, this "transfer" occurred within 90 days of the Petition Date, on account of an antecedent debt, at a time when Debtor was insolvent, and enabled Advanced to receive more on its claim than if the debt had been paid along with other unsecured creditors in this case. Trustee contends that the complaint sufficiently states a claim upon which relief can be granted but requests leave to amend the complaint if the court finds otherwise.

---

[6] Unless otherwise indicated, all statutory references are to Title 11 of the United States Code, §§ 101-1532 (2011) ("Code" or "Bankruptcy Code").

Advanced's answer denies that the Funds were ever property of the estate that would be recoverable by Trustee under Code § 542 or 543. Advanced's position is that Debtor's interest in the Funds was merely a contingent interest pending the outcome of the state court litigation, which terminated prior to bankruptcy, subject only to Debtor's remaining right to appeal the state court's determination. With regard to Trustee's asserted claim of a preferential transfer, Advanced contends that the relevant transfer occurred when Hill transferred the monies *in custodia legis* pursuant to the August 17, 2010 order, well before the ninety-day window of Code § 547. Advanced further argues that because the Default Judgment confirmed the Funds to be property of Advanced, the entry of the Default Judgment did not transfer an interest in property of Debtor. Finally, the Answer raises a number of affirmative defenses including an assertion that this court lacks personal and subject matter jurisdiction over the Clerk and the Funds, but recognizing the jurisdiction of this court to address the claims raised by Trustee in his complaint.

### *Legal Standard*

The pending motion is brought pursuant to Fed. R. Civ. P. 12(c), made applicable to this proceeding by Fed. R. Bankr. P. 7012. In deciding a Rule 12(c) motion for judgment on the pleadings, the applicable standard is the same as for dismissals under Rule 12(b)(6). *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). When a defendant moves for judgment on the pleadings, the reviewing court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving plaintiff. *See Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009). Although factual allegations in the complaint are presumed to be true, the tenet does not

apply to legal conclusions. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). To survive a motion for judgment on the pleadings, plaintiff's complaint must allege sufficient facts which, when accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

### *Discussion*

There is little dispute as to the relevant factual background that underlies the claims asserted. The present motion, however, raises the question as to whether as a matter of law, granting all reasonable inferences in favor of the Plaintiff, the claims should be dismissed. The court will first address the nature of the Funds and the bankruptcy estate's interest in the Funds and then consider Trustee's allegations of a preferential transfer of Debtor's interest in the Funds.

<u>*Funds in custodia legis*</u>

Property of the estate consists of all legal and equitable interests of Debtor in property wherever located. 11 U.S.C. § 541(a). A debtor's legal or equitable interest in property is determined under state law. *Butner v. United States,* 440 U.S. 48, 54-55 (1979). Since the Funds arose as a direct result of a court order directing placement of the money with the Clerk pursuant to Rule 67 of the West Virginia Rules of Civil Procedure, West Virginia law applies. Pursuant to West Virginia law, money so deposited comes under the exclusive control of the court and can be withdrawn only in accordance with further orders entered by the court. *See Arcuri v. Great Am. Ins. Co.,* 176 W. Va. 211, 218 (1986), citing W. Va. R. Civ. P. 67. As such, the Funds were and remain *in custodia legis* under the exclusive control of the West Virginia Kanawha County Circuit Court.

Unfortunately there are few cases under West Virginia law that address how funds placed *in custodia legis* should be treated, but the court is persuaded by the reasoning of other courts on the issue. Based upon broad language in some early reported cases, it has been generally stated that funds *in custodia legis* are not subject to attachment or garnishment. *See e.g., Lottawanna*, 87 U.S. 201 (1873); *United States v. Hunt*, 513 F.2d 129, 139 (10th Cir. 1975) ("Property and funds *in custodia legis* are not attachable or garnishable..." *citing* 6 Am. Jur. 2d, Attachment and Garnishment, §§ 196, 197); *United States v. Van Cauwenberghe*, 934 F.2d 1048 (9th Cir. 1991). The rule is based on "the desirability of avoiding a clash between judicial jurisdictions which would result from any attempt to use the process of one to seize assets in the control of another authority." *Van Cauwenberghe*, 934 F.2d at 1063. The doctrine bars any attachment of funds in a court's registry that would prevent the initial court from exercising its control and disposition of the funds consonant with the purpose for which the funds were initially deposited and applies to prevent one court from interfering with the authority of another. *See Starboard Venture Shipping, Inc. v. Casinomar Transp., Inc.*, 1993 WL 464686 (S.D.N.Y. Dec. 8, 1993). The property, however, is not wholly immune from attachment. Subject to the foregoing considerations, a subsequent attachment is allowed to attach to the contingent, reversionary interest of the debtor. *See Clarkson Co. Ltd. v. Shaheen*, 716 F.2d 126, 128 (2d Cir. 1983) (discussing *Dunlop v. Patterson Fire Ins. Co.*, 74 N.Y. 145, 148-49 (1878) as authority for an attachment and the contingent, subordinate nature of the attachment).

*Bankruptcy Estate's Interest in the Funds under Code§ 541(a)*

The bankruptcy estate came into existence on January 26, 2011, the date that the involuntary petition was filed.[7] On that date, there was an outstanding judgment of the Kanawha County Circuit Court directing that the Funds, which were less than the amount of the judgment, be turned over to Advanced. The bankruptcy estate acquired the interest of Debtor in the Funds at that time. As of the Petition Date, the only interest that Debtor had in the Funds was a contingent, reversionary interest subject to the judgment being vacated and, following trial, the court entering judgment: (1) in favor of Advanced in an amount less than what was in the court registry with the balance reverting to Debtor; or, (2) in favor of Debtor and dismissing Advanced's entitlement to recover any amount. Trustee's lien interest on behalf of the bankruptcy estate attached solely to Debtor's interest, which was a contingent, reversionary interest subordinate to, and dependent upon, the judgment entered in favor of Advanced being vacated and Debtor being ultimately successful in the litigation.

The Default Judgment was rendered and entered on the civil docket. Trustee contends that "[a]s of the Petition Date, the Default Judgment was not final so that there was no obligation on the part of the Clerk to transfer the Funds to Advanced."[8] However, under West Virginia law, any judgment that is properly rendered and entered on the civil docket is final. *See State v. Mason*, 157 W. Va. 923 (1974). Accordingly, the Default Judgment is final and the Funds belong to Advanced. *See Pan Am. World Airways, Inc.*

---

[7] "Commencement of a case under section 301, 302, or 303 of this title creates an estate." 11 U.S.C. § 541.
[8] *See* Complaint for: (I) Declaratory Judgment and to Determine the Extent, Priority, and Validity of Liens, Pursuant to F.R.B.P. 7001; (II) Recovery and Turnover of Funds Pursuant to 11 U.S.C. §§ 541, 542 and/or 543; (III) To Avoid a Preferential Transfer Pursuant to 11 U.S.C. § 547; and (IV) To Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 502 and 550 at 9 ¶ 60, *Woodard v. Gatson (In Re Bianchi Indus. Serv., LLC)*, No. 11-31035 (Bankr. N.D.N.Y. Sept. 7, 2011).

9

*v. Care Travel Co. Ltd. (In re Pan Am)*, 166 B.R. 538, 542 (Bankr. S.D.N.Y. 1993) (holding that upon a final judgment under state law, funds held *in custodia legis* belong to the winning party despite the possibility that the party might not have any rights to the fund if the judgment were reversed on appeal). Thus, as of the Petition Date, the Funds were not property of the estate. Since the Funds are not property of the estate, this court agrees with Advanced that it is without jurisdiction over the Funds and the Clerk. *See In re Loubier*, 6 B.R. 298, 303 (Bankr. D. Conn. 1980) (finding that the bankruptcy court had no jurisdiction to order disposition of property that was not property of the estate).

On the Petition Date, the estate's interest in the Funds was simply the right to appeal the Default Judgment or move to set it aside. Under West Virginia law, a notice of appeal must be filed within 30 days of entry of a judgment. W. Va. R. Civ. P. 73(c) (2012). Further, "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."[9] W. Va. R. Civ. P. 55(c) (2012).

---

[9] W. Va. R. Civ. P. 60(b) provides:
    On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

The bankruptcy filing extended the time for Debtor to file a motion to set aside or appeal the Default Judgment. Bankruptcy Code § 108(b) provides, in pertinent part:

> If applicable nonbankruptcy law [or] an order entered in a nonbankruptcy proceeding ...fixes a period within which the debtor... may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of-- (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 60 days after the order of relief.

To date, neither a notice of appeal nor motion to set aside the Default Judgment has been filed with the state court. In accordance with Code § 108(b), Debtor was granted 60 days from entry of the order for relief within which to appeal, the 60-day period being later than the 30-day appeal period prescribed by West Virginia law. *Local Union No. 38 v. Custom Air Sys., Inc.*, 333 F.3d 345 (2d Cir. 2003). Since Debtor failed to timely appeal pursuant to the extended period allowed under the foregoing Code section, it has lost its right to do so.

Debtor alternatively could have requested the state court to set aside the Default Judgment pursuant to W. Va. R. Civ. P. 55(c). Assuming that Trustee, now standing in the shoes of Debtor, could advance a persuasive argument for the state court to set aside the Default Judgment, Trustee would have to make the motion before the state court in accordance with W. Va. R. Civ. P. 60(b) and Code § 108(b).

In light of the foregoing analysis, Trustee's remaining claims -- that the Funds are property of the estate as an account receivable due from Hill to Debtor, and that Advanced cannot have a superior interest in the Funds because Advanced did not have a valid mechanic's lien -- cannot survive. When the Funds were paid into the court

11

registry, they lost their identity as an account receivable. At oral argument, Trustee's counsel as much conceded the point that Hill's deposit with the Clerk substituted cash in satisfaction of what it owed. The deposit of cash was also the *quid pro quo* for Advanced's release of its mechanic's lien.

The court finds the issue of the validity of the mechanic's lien irrelevant in determining the estate's interest in the Funds and the motion before the court. The issue of whether the lien was properly perfected under West Virginia law was raised in the state court litigation. The state court's August 17, 2010 order directed money to be paid and held *in custodia legis* to save Hill and Bayer from expending further litigation costs when there was no dispute that the money was owed.[10] The court concluded that any dispute over the Funds was solely between Bianchi and Advanced.[11] Over Debtor's objection, the mechanic's lien was released and discharged, which, according to the court, rendered "any dispute over the lien moot."[12] Debtor did not seek a stay nor did it appeal the court's August 17, 2010 order. Trustee may not go back in time and resurrect a lien which has long since been released.

*Preferential transfer under Code § 547*

Trustee claims that under Code § 547(b) there was a transfer of an interest in property of Debtor on or within 90 days before the date of filing the petition ("Preference Period"). Here, the Default Judgment was entered only eight days prior to the Petition Date. However, because the monies were deposited *in custodia legis* approximately five months prior to the Petition Date, the court finds that the entry of the Default Judgment

---

[10] *See* Order Granting Advanced Specialty Contractor LLC's Motion for Consent for Deposit into Court at 5 ¶ 14, *Bianchi Industrial Services, LLC v. Advanced Specialty Contractors, LLC*, No. 09-C-858 (Cir. Ct. Kanawha County Aug. 17, 2010).
[11] *See id.* at ¶ 13.
[12] *Id.* at ¶ 6.

did not transfer any rights in the Fund. It is well established that the relevant transfer date for preference purposes as to funds held *in custodia legis* is the date of their deposit with the court. *See e.g., Saper v. West*, 263 F.2d 422, 427 (2d Cir. 1959).

In *Saper*, the monies at issue were deposited with the clerk of a California state court pending the outcome of litigation. Over two years later, a California Court of Appeals ordered the monies to be paid to the prevailing party. The Supreme Court of California denied a petition for rehearing. The losing party subsequently filed for bankruptcy relief in the Southern District of New York. The appointed trustee sought to recover the monies as a fraudulent and preferential transfer, arguing that the monies were disbursed to the prevailing party within the applicable periods. The Second Circuit Court of Appeals disagreed. In affirming the District Court's ruling, it found that the relevant transfer occurred when the money was deposited with the court, nearly three years prior to the commencement of the bankruptcy case. *See id.* at 427.

Although *Saper* was decided under the Bankruptcy Act, courts have since reaffirmed its holding under the new Bankruptcy Code. *See e.g., Pan Am. World Airways v. Care Travel Co. (In re Pan Am Corp.)*, 166 B.R. 538 (Bankr. S.D.N.Y. 1993) (finding that the relevant transfer for the 90-day clock under Code § 547 is the transfer of funds into the custody of the court). As such, *Saper* continues to be valid and binding law.

In this case, the state court's August 17, 2010 order directed that Hill deposit the monies *in custodia legis* within ten days of the order. In accordance with *Saper*, the relevant transfer for the Code § 547 analysis occurred when Hill deposited the Funds with the clerk of Kanawha County Circuit Court. Because this transfer occurred well outside

13

the 90-day Preference Period, Trustee is unable to satisfy a necessary element of his preference claim.

### *Leave to amend is denied*

As a last resort, Trustee requests leave to amend the complaint to allege additional facts known or to be discovered at the meeting of creditors pursuant to Fed. R. Civ. P. 15 and Fed. R. Bankr. P. 7015. At the hearing on the pending motion, however, Trustee's counsel was unable to articulate any fact which, if pled, would reveal a new claim or permit a claim previously asserted to survive. Instead, counsel returned to issues concerning the validity of the mechanic's lien which, as previously discussed, are irrelevant to Trustee's ability to state a claim for relief.

In determining whether to grant leave to amend, a court must consider specified factors "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Fed. R. Bankr. P. 7015(a) provides that a court should freely grant leave to amend a pleading when justice so requires. Nevertheless, the Trustee's inability to articulate how any amendment would allege facts sufficient to support the complaint renders any amendment futile. Furthermore, although Advanced was awarded Default Judgment by the state court over one year ago, after three years of protracted litigation, it still finds itself without closure. In light of the delay and futility of granting leave to amend, the court denies Trustee's request.

*Conclusion*

Based upon the pleadings, Trustee has failed to "state a claim that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570. Therefore, the motion by Advanced for judgment on the pleadings is granted. In light of this court's finding that the Funds are not property of the estate and Trustee's failure to state a claim that the Funds are subject to recovery as a preferential transfer, there is no stay that precludes the Clerk from disbursing the Funds in accordance with the Kanawha County Circuit Court's Default Judgment.

A separate judgment dismissing the complaint shall be entered in accordance with Fed. R. Bankr. R. 7058.

So Ordered.

Dated: February 23, 2012
Syracuse, New York

Margaret Cangilos-Ruiz
United States Bankruptcy Judge